D & H Bagel Bakery, Inc. v. Commissioner.
D & H Bagel Bakery, Inc. v. Commissioner
Docket No. 47062.
United States Tax Court
T.C. Memo 1955-100; 1955 Tax Ct. Memo LEXIS 238; 14 T.C.M. (CCH) 334; T.C.M. (RIA) 55100; April 22, 1955
*238 Deficiencies exist for each of three taxable years in controversy because of failure to report income from business and because of the disallowance of certain deductions. Held: 1. Part of the deficiency in each year is attributable to fraud with intent to evade tax. Fraud penalty determined. 2. Petitioner not entitled to depreciate an agreement not to compete because it is not severable from good will and a separate value cannot be assigned to it. 3. Petitioner is not entitled to carry forward a net operating loss. 4. Delinquency penalty properly imposed for failure to file a return. Vincent B. Lewin, Esq., for the petitioner. Maurice E. Stark, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax and penalties for the years and in the amounts shown in the following statement: Year Ended
50%
25%
October 31st
Deficiency
Penalty
Penalty
1948
$4,916.99
$2,458.50
1949
5,189.41
2,594.71
1950
4,005.76
2,002.88
$1,001.44
The deficiencies and fraud penalties arise principally because of the alleged failure to report a substantial amount of *239 gross income from petitioner's bakery business. Part of the deficiencies is attributable to the disallowance of net operating loss deductions for fiscal years 1948 and 1949, and a deduction taken for amortization of the cost of a restrictive covenant. The delinquency penalty also has been claimed for the failure to file a return for the fiscal year 1950. Findings of Fact The petitioner, D & H Bagel Bakery, Inc., is a corporation organized and existing under the laws of the State of New York, with its principal office located in the Borough of Queens, City of New York. The petitioner's income tax returns for the years ending October 31, 1948 and October 31, 1949, were filed with the collector of internal revenue for the first district of New York. No return was filed for the year ended October 31, 1950. The petitioner operated a bagel bakery. A bagel is a form of a hard roll or bun made principally from high gluten flour and water, with small amounts of salt and malt added. A bagel is shaped like a doughnut with a hole in the middle. Bagels are made traditionally in two sizes: bull, or large, bagels and small bagels. When distributed, there are 4 2/3 dozen (56) bagels to *240 a box. The bagel baking industry is concentrated in the New York City metropolitan area and the principal retail sales are made during the weekend to Jewish patrons. About 35 bakeries bake and sell bagels in the metropolitan area of New York City and northern New Jersey. Internal revenue agents investigated the bagel industry, commencing about April 1951, and continuing thereafter for several years. In the course of this examination, revenue agents employed a formula, secured from General Mills, to test the accuracy of the returns of sales made by the various companies in the industry. The formula showed the number of small-sized bagels that could be produced from 100 pounds of flour, together with proportionate amounts of other ingredients. In applying the formula to the petitioner's production, an adjustment was made to compensate for shrinkage from waste, personal consumption by employees, returns of stale merchandise and similar factors which would reduce the net production available for retail sale from a specified quantity of flour. After adjustment for shrinkage as above, the formula yielded an average production of 20 boxes containing 56 bagels each from 100 pounds of flour. *241 The petitioner's books and records indicated that it consumed 2,450, 2,800 and 2,675 100-pound bags of flour, respectively, for the taxable years ended October 31, 1948, 1949 and 1950. On the basis of the foregoing formula, petitioner produced and sold 228,667, 261,333 and 249,667 dozen bagels, respectively, during the fiscal years 1948, 1949 and 1950 here in issue. During these years bagel bakeries received 35 to 55 cents per dozen for bull bagels and 31 to 33 cents per dozen for small bagels. Some prices for the latter ranged as low as 26 to 28 cents per dozen. In converting petitioner's production into receipts, the respondent's agents used an average price of 29 cents per dozen. This price reflected adjustments for returns of stale bagels and returns for other reasons. Petitioner received gross receipts from the sale of bagels in the amounts of $66,313.43, $75,786.57 and $72,403.43, respectively, for the taxable years ended October 31, 1948, 1949 and 1950. In the same three years, petitioner also received $367.50, $420 and $401.25, respectively, from the sale of empty flour sacks which it did not report. The petitioner reported on its Federal income tax returns gross receipts *242 from sales in the amounts of $47,700.25 and $58,943.42, respectively, for the taxable years ended October 31, 1948 and 1949. An unsigned return for 1950 placed in evidence but not bearing a filed stamp showed gross receipts of $54,574.30. Petitioner's reported receipts were not supported by inventory records, sales records or other subsidiary records. The business operated by petitioner was purchased from Long Island Bagel Bakery, Inc. Long Island agreed to sell its business to David Lieberbaum on November 1, 1946. The contract was assigned to the petitioner thereafter and petitioner paid $13,800 for the business. The purchase agreement stated that: "The parties agree that the purchase price of all tangible personal property, not intended for re-sale amounts to $1,000.00, the balance of said purchase price being in payment of good will and inventory intended for re-sale." The two owners of Long Island agreed in the contract that neither would engage in a similar business, directly or indirectly, for a period of five years. Nothing in the purchase agreement indicated how much of the price was in consideration for the foregoing restrictive covenant. There was attached to *243 the purchase agreement a list of more than 140 customers of Long Island Bagel Bakery which was turned over to the petitioner. For the two fiscal years here involved for which returns were filed, the petitioner deducted $2,560 as depreciation on the restrictive covenant given by the former owners - this amount being 20 per cent of a basis of $12,800 which petitioner assigned as the cost of the covenant not to compete. On its return for the fiscal year ended October 31, 1948, the petitioner showed total deductions of $15,473.06, which amount was exactly equal to its reported total income for that year. Among the deductions taken was an item of $127.29 as a net operating loss deduction carried forward from the previous year. On its return for the fiscal year ended October 31, 1949, the petitioner showed net income of $2,934.49, before application of a net operating loss deduction. After subtracting a net operating loss deduction in the amount of $3,824.68, the petitioner's return showed a net loss of $890.19 for the year. Petitioner's books and records for the years involved were inadequate because of the lack of proper inventory records and sales records. Gross receipts from *244 petitioner's bakery operations were only partly entered on its books and petitioner understated on its returns for each of the fiscal years ended October 31, 1948 and 1949 the true and correct amount of its gross receipts. Petitioner's taxable income was intentionally understated on its returns for each of these two years. Petitioner understated its income on its returns for each of these two years fraudulently with intent to evade taxes, and part of the deficiencies in each of these two years results from fraud with intent to evade taxes. Petitioner failed to file a return for the fiscal year ended October 31, 1950. Petitioner had taxable income for this year. The failure to file was not due to reasonable cause but was a deliberate failure in order to evade taxes. Part of the deficiency for this year results from fraud with intent to evade taxes and petitioner is also liable for the penalty claimed for the failure to file a return for the year. For the year ended October 31, 1948, petitioner's unreported income from sales was $18,980.68; for the year ended October 31, 1949, its unreported income from sales was $17,263.15; and for the year ended October 31, 1950, its unreported *245 net income was $17,200.61. Petitioner is not entitled to a deduction for depreciation of a restrictive covenant for any of the taxable years here in issue. Petitioner is not entitled to net operating loss deductions for the taxable years ended October 31, 1948 and 1949. Opinion ARUNDELL, Judge: This proceeding involves several issues, each of which can best be treated independently. I. Fraud. Fraud has been charged for each of the three years before us. Returns were filed for the fiscal years 1948 and 1949 and no return was filed for the fiscal year 1950. The books and records disclosed a large understatement of gross receipts and gross income, and in the two years in which returns were filed the same understatement of gross receipts and gross income appeared on the returns filed. To reconstruct the petitioner's correct income, the respondent developed a formula which converted the raw materials used in each year into units available for sale and converted the latter, by application of an average price per dozen, into total gross receipts. The petitioner does not now deny that its books and records failed to show the full amount of its gross receipts and gross income *246 in the three years before us and admits that its gross income was understated on its returns for 1948 and 1949. It attempts to justify its failure to report its correct income by arguing that the undisclosed amounts were expended for legitimate deductible business expenses. The petitioner also alleges that the respondent's formula results in a determination of substantially more income than petitioner actually received from the sale of its bakery products. Petitioner's excuse for its failure to report its correct gross income is that there existed in the industry a practice of paying a portion of the wages in cash and the amount so paid was not deducted as such on its records but, instead, gross receipts were reduced in the amount of the cash payments. It was testified that this practice was entered into in order to avoid withholding on the full amount of the wages paid and, in fact, there was no withholding on the cash wages so paid. Its argument now is that the additional amount of wages allegedly paid to its employees would have been a legitimate deduction had it been reported and claimed as such and, as no more was withheld from gross receipts than was used to pay wages in cash, *247 the petitioner did not realize any profit from the unreported income. Thus, if we were to paraphrase petitioner's defense, although it admittedly failed to report correctly its gross receipts, the amounts unreported were exactly equivalent to legitimate deductions for expenses of its business which it did not claim. Petitioner's elaborate argument is directed primarily to the fraud issue. If we were to accept petitioner's explanation for the admitted failure to report correctly its gross receipts, presumably there would be no addition to the tax in the form of the fraud penalty. But we are unable to accept the petitioner's claims. Petitioner is here without any substantiation for its defense that we can accord sufficient reliability to accept. Certainly there is no documentary evidence to support petitioner's defense. One of its executives testified generally to the alleged payroll practices and the petitioner's accountant testified that, to his embarrassment, he learned of additional unreported payroll expenditures made by the petitioner, but these broad statements are not enough. The only employee of petitioner who was questioned on the matter of receiving part of his wage in cash *248 denied ever receiving a cash wage. Fraud is never presumed and proof that there is fraud rests on respondent. Fraud is seldom capable of direct proof and often must be inferred from the facts and circumstances of a particular case. The intentional failure to report income is proved here, both by petitioner's own admission as well as by respondent's reconstruction of petitioner's gross receipts. Starting, as we do, with an admission that the petitioner's books were deliberately kept incorrectly and that its gross receipts were intentionally understated on its returns for the two years for which returns were filed and with the fact that no return was filed in the third year, we think that the natural inferences that flow from these admissions and facts point clearly to fraud. We do not think that the petitioner avoids these inferences simply by an ingenious excuse which is not corroborated. Therefore, we conclude that the petitioner intentionally failed to report correctly its income for each of the three years before us in order to evade taxes and that the respondent has proved the fraudulent intent to evade taxes. Consequently, we approve the imposition of the fraud penalty for each *249 of the years involved. In the circumstances of this case, the respondent was justified in reconstructing the petitioner's income for the years involved. His formula was a reasonable and reliable method of reconstructing the petitioner's gross income for the years in controversy. The petitioner claims that the formula resulted in attributing to it substantially more income than it actually received and, while some evidence in support of that contention was offered, we are not persuaded that the respondent's formula should not be accepted. Certainly some method of reconstructing the petitioner's income was necessary because the books and records did not correctly reflect income. If the petitioner is to upset respondent's determination of its income, it must produce more evidence than may be found in this record. II. Restrictive Covenant. The respondent has disallowed a deduction of $2,560 taken by petitioner for depreciation of the cost of a covenant not to compete for each of the two years before us for which returns were filed. For the third year, the fiscal year ending October 31, 1950, in reconstructing petitioner's net income, the respondent did not allow a deduction for depreciation *250 of the covenant. The petitioner purchased its business for a total price of $13,800. The contract of purchase contained an agreement of the former owners that they would not engage in a similar business in the vicinity of petitioner's operations for a period of five years. The agreement also contained a clause pricing the tangibles in the deal at $1,000, the remainder "being in payment of good will and inventory for re-sale." The petitioner treated the balance of the purchase price, $12,800, as being attributable to the restrictive covenant and began depreciating it over a five year period, [1] three of which are before us. The respondent disallowed the deduction and has determined that the sum allegedly attributable to the restrictive covenant represents the cost of good will which is not depreciable. We think the rule governing this issue was well stated in , where we said: "If * * * an agreement [not to compete] can be segregated, not so much for purposes of valuation as in order to be assured that a separate item has actually been dealt with, the agreement is ordinary income and *251 not the sale of a capital asset. . But where it accompanies the transfer of good will in the sale of a going business and it is apparent that the covenant not to compete has the function primarily of assuring to the purchaser the beneficial enjoyment of the good will which he has acquired, the covenant is regarded as nonseverable and as being in effect a contributing element to the assets transferred. ; ." The words of the contract, placed alongside the above rule, decide the matter. It is obvious from the contract itself that there was no separate consideration in the bargain for the agreement not to compete; it was included to guarantee the good will that was the intangible of real value that was purchased. The covenant, thus, was really part of the good will and as such it cannot be depreciated. III. Net Operating Loss. The petitioner claimed it was entitled to carry foward into the first and second years before us a net operating loss from the year ended October 31, 1947. The returns for the fiscal years 1948 and 1949 show deduction *252 of a portion of the claimed loss. The respondent disallowed the loss with the determination that "a survey of the return for the year ended October 31, 1947, indicates that no loss was sustained for that taxable year." The petitioner claimed error in the above determination in its petition but introduced no evidence with respect to it at the trial and did not argue the point on brief. We take it that the petitioner has abandoned the issue. IV. Delinquency Penalty. The respondent claims a penalty of 25 per cent for the petitioner's failure to file its final return for the fiscal year 1950. As with the preceding issue, the petitioner claimed error in its petition but did not pursue the matter at the trial or on brief. Consequently, the issue must be taken as abandoned and the respondent's determination is approved. Decision will be entered under Rule 50. Footnotes
1. Twenty per cent of $12,800 is $2,560.↩